1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3

KENTRELL D. WELCH,

Case No.: 3:22-cv-00389-CSD

4

Plaintiff,

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

5

v.

Re: ECF No. 69

6

WILLIAM RUEBART, et al.,

7

Defendants.

8

9    Before the court is Defendants' motion for summary judgment. (ECF Nos. 69, 69-1 to

10   69-5.) Plaintiff filed a response. (ECF Nos. 75, 76.)[1] Defendants filed a reply. (ECF No. 78.)

11   For the reasons set forth below, Defendants' motion for summary judgment is granted.

12                                    **I. BACKGROUND**

13   Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC),

14   proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. (Second Amended

15   Compl., ECF No. 19.) The events giving rise to this action took place while Plaintiff was housed

16   at Ely State Prison (ESP). (*Id.*)

17   The court screened the operative complaint, Plaintiff's Second Amended Complaint

18   (SAC), and allowed him to proceed on a single claim for First Amendment interference with

19   mail against Defendants Roman, Garcia, Rivera, Tasheena Cooke, William Reubart, Mauro,

20   David Drummond, William Gittere, and Patricia Hernandez. These claims are based on

21

22

23

---

[1] Based on the court's review of its contents, ECF No. 76 contains exhibits to Plaintiff's response to Defendants' motion for summary judgment. However, the document was entered incorrectly into the court's electronic filing system as being an exhibit relating to an order previously entered by the court.

allegations that between June 2020 and October 2022, Defendant Roman refused to send Plaintiff's outgoing mail, and Roman twice rejected Plaintiff's incoming mail. Although Plaintiff informed Defendants Cooke, Mauro, Drummond, Hernandez, Reubart, and Gittere of the interference with his mail, none acted to prevent the interference or otherwise ensure Plaintiff's mail was properly delivered. (*See* Screening Order, ECF No. 21.)

On November 15, 2023, the court granted the parties' stipulation to stay the case pending an early exhaustion motion for summary judgment. (ECF Nos. 54, 55.) Defendants subsequently filed a motion for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. (ECF No. 56.) The motion was granted in part and denied in part. (*Id.*) Defendants' motion was granted, and judgment was entered, as to all claims against Defendants Garcia, Rivera, and Hernandez. (ECF Nos. 62, 63.) However, the court found Plaintiff had properly exhausted his administrative remedies regarding his First Amendment interference with mail claims related to Plaintiff's outgoing mail to the IRS/Treasury Department (grievance 2006-31-16622) and incoming mail characterized as L.G.B.T.Q. pamphlets (grievance 2006-31-36017) against Defendants Cooke, Drummond, Gittere, Mauro, Reubart, and Roman. (ECF No. 62.) The court then entered an order lifting the stay and issued a revised discovery plan and scheduling order. (ECF No. 64.)

Defendants now move for summary judgment on Plaintiff's First Amendment interference with mail claims related to the mail to the IRS/Treasury Department and the L.G.B.T.Q. pamphlets against Defendants Cooke, Drummond, Gittere, Mauro, Reubart, and Roman. Defendants argue that they are entitled to qualified immunity as Plaintiff neither establish that a constitutional violation occurred nor that a constitutional violation was clearly established. Defendants further argue there is no evidence to show personal participation in any

alleged constitutional violations by Cooke, Drummond, Gittere, Reubart, or Roman. Finally, Defendants also argue that Plaintiff should be issued a strike for failure to state a claim upon which relief may be granted.[2] (*See* ECF No. 69.)

Plaintiff responded, arguing the action is "erroneously limited" to the First Amendment interference with mail claims. Plaintiff attempts to relitigate the court's previous order granting Defendants summary judgment due to exhaustion, claiming Defendants misrepresented the grievances used to show failure to exhaust. Plaintiff also includes arguments on the merits of his claims which have been disposed of by the order granting summary judgment based on exhaustion. As to the issues currently pending before the court, Plaintiff argues that sending mail to a government entity constitutes legal mail. Plaintiff argues he fully complied with the NDOC's outgoing and incoming mail policies. Finally, Plaintiff argues that all defendants personally participated in the alleged constitutional violations. (*See* ECF No. 75.)

Defendants replied, noting that Plaintiff's response violated the court's local rules by exceeding the 30-page limit for responses to motions for summary judgment without leave of court. Defendants next note that although Plaintiff spends significant time in his response relitigating the court's previous grant of summary judgment, Plaintiff did not file a motion for

---

[2] The PLRA defines a strike-worthy dismissal as an "action or appeal in a court of the United States that was *dismissed* on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g) (emphasis added). When a case is decided on summary judgment, and there is not a finding that the complaint was frivolous, malicious or failed to state a claim, the dismissal on summary judgment does not count as a strike. *El-Shaddai v. Wang*, 833 F.3d 1036, 1044 (9th Cir. Aug 12, 2016). In this case, the court found during screening that Plaintiff did allege claims upon which relief may be granted. Although ultimately Plaintiff could not prove his case, as discussed below, that does not negate the fact that he did allege proper claims. *See id.* at 1045 ("Because summary judgment was granted on evidentiary grounds, rather than for frivolousness, maliciousness, or failure to state a claim, [a previous case] does not count as a strike."). Thus, a strike will *not* be imposed for failure to state a claim upon which relief may be granted.

reconsideration or an appeal of the order. Turning to the merits of their motion, Defendants conclude by arguing Plaintiff failed to establish his outgoing mail was legal and that Plaintiff failed to establish any violations regarding his incoming mail. (*See* ECF No. 78.)

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the

nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25.

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows a genuine

dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

## III. DISCUSSION

### A. Outgoing Mail

#### 1. Legal Standard

"[P]risoners have a protected First Amendment interest in having properly marked legal

mail opened only in their presence." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir.

2017) (concluding that the protected First Amendment interest extends to civil legal mail).

Consistent with the First Amendment, prison officials may (1) require that mail from attorneys

be identified as such and (2) open such correspondence in the presence of the prisoner for visual

inspection. *See Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974); *Sherman v. MacDougall*, 656

F.2d 527, 528 (9th Cir. 1981). *Cf. Mann v. Adams*, 846 F.2d 589, 590–91 (9th Cir. 1988) (per

curiam) (concluding that mail from public agencies, public officials, civil rights groups, and

news media may be opened outside the prisoners' presence in light of security concerns)

Prison regulations concerning outgoing prisoner mail may need to further "important or

substantial governmental interest[s] unrelated to the suppression of expression," *Procunier v.*

*Martinez*, 416 U.S. 396, 413 (1974), *limited by Thornburgh v. Abbott*, 490 U.S. 401, 413-14

(1989), and they must at least more closely fit the interest served than regulations concerning

incoming mail, *see Thornburgh*, 490 U.S. at 412; *Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th

Cir. 2008) (per curiam); *O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996); *Witherow v.*

*Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam); *see also Cal. First Amend. Coal. v.*

*Woodford*, 299 F.3d 868, 878–79 (9th Cir. 2002). Prison officials do not need to show there is no

1  less restrictive mail policy that could serve the same penological interests. *See Thornburgh*, 490

2  U.S. at 412; *Witherow*, 52 F.3d at 265.

3      Prison officials may justifiably censor outgoing mail concerning escape plans, containing

4  information about proposed criminal activity, or transmitting encoded messages. *See Procunier*,

5  416 U.S. at 413. Prison officials may also visually inspect outgoing mail to determine whether it

6  contains contraband material that threatens prison security or material threatening the safety of

7  the recipient. *See Witherow*, 52 F.3d at 266; *Royse v. Superior Ct.*, 779 F.2d 573, 574– 75 (9th

8  Cir. 1986).

9      However, outgoing *legal* mail is subject to more protections. *See Nordstrom v. Ryan*, 856

10  F.3d 1265, 1272 (9th Cir. 2017) ("Legitimate penological interests that justify regulation of

11  outgoing legal mail include 'the prevention of criminal activity and the maintenance of prison

12  security.'" (quoting *O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996))). In *Nordstrom v.*

13  *Ryan*, the Ninth Circuit suggested using a procedure of ensuring legal mail was sent to a licensed

14  attorney was "an obvious, easy alternative[]" to inspecting the contents to make sure that the

15  letter concerns legal subject matter. 856 F.3d at 1273 (citing *Turner*, 408 U.S. at 90). The Ninth

16  Circuit concluded that "[b]ecause there is no evidence of abuse of the legal mail system when

17  outgoing mail is addressed to an attorney, there is no reason to conclude that a more limited

18  inspection of outgoing legal mail would have an adverse effect on prison staff, other inmates, or

19  allocation of resources within prisons." *Id.*

20  **2. Facts**

21      Legal mail is governed by NDOC Administrative Regulation (AR) 722 and general

22  inmate correspondence is governed by AR 750. (ECF No. 56-9; ECF No. 56-10; ECF No. 56-11

23  at 4; ECF No. 69-4 at 3.) AR 722.08(7) requires all outgoing legal mail to be addressed to an

attorney or legal representative. (ECF No. 56-9 at 13; ECF No. 56-11 at 4; ECF No. 75 at 16.) Per AR 722.08(7)(C), if the mail is not legal in nature, the mail will not be processed. (ECF No. 56-9 at 14; ECF No. 56-11 at 4.) There is no limit to the amount of legal postage department charges an indigent inmate may accumulate, however, this only applies to the pursuit of civil rights, habeas corpus, or post-conviction litigation actions. (*Id.*) Indigent inmates must sign a "brass slip" to ensure the State is reimbursed once funds are available. (*Id.*) Inmates are responsible to comply with mail and correspondence procedures. (ECF No. 56-10 at 2; ECF No. 56-11 at 4.)

On February 9, 2021, Plaintiff filed informal grievance 2006-31-16622 alleging he was denied the ability to send outgoing legal mail to the Department of Treasury regarding Covid-19 stimulus funds. (ECF No. 56-4 at 2; ECF No. 56-11 at 3.) This grievance was denied because Plaintiff "failed to provide any information that [he has] an active case with the US Treasury Department. The US Treasury Department isn't a recognized legal address unless you have an active case." (ECF No. 56-4 at 11.)

On May 7, 2021, Plaintiff filed a first level grievance which included a copy of the envelope he attempted to send to the Department of Treasury, the "brass slip" associated with the letter, and documents containing information about Covid-19 stimulus funds and incarcerated individuals. (ECF No. 56-4 at 8-10, 12.) The envelope is addressed as follows:

> c/o: Dept. Manager, Identity Theft dept.
> Dept. of the Treasury
> Internal Revenue Service
> P.O. Box 9052
> Andover, MA, 01810-9052

(ECF No. 56-4 at 10; ECF No. 56-11 at 3.) The "brass slip" also identifies the recipient of the mail as "IRS Identify Theft dept." (*Id.*) The documents attached to the grievance contain instructions for incarcerated individuals to receive Covid-19 stimulus funds based on a federal

court's ruling in *Scholl v. Mnuchin*, No. 4:20-cv-5309-PJH (N.D. Cal.), that the IRS cannot deny payments to individuals solely because they are incarcerated. (*Id.* at 8-9.) The documents direct individuals to mail a claim to the Department of Treasury to receive any funds. (*Id.*)

On August 20, 2021, the first level grievance was subsequently denied because under AR "722.08.07[,] all out going legal mail must be addressed to an attorney or legal representative." (*Id.* at 12-13.) That same day, Plaintiff filed a second level grievance on the same grounds as his informal and first level grievance. (*Id.* at 14-15.) On December 23, 2021, the second level grievance was denied because Plaintiff failed to address the letter to an appropriate legal entity for legal mail. (*Id.* at 14, 16.)

In response to Defendants' interrogatories, Plaintiff states the case associated with the mail he attempted to send is *Scholl et al v. Mnuchin et al*, No. 22-cv-05309. (ECF No. 69-2 at 11.) In that case, the court certified a class of individuals under Federal Rule of Civil Procedure 23(b)(2) and appointed Kelly M. Dermody of Lieff, Cabraser, Heimann & Bernstein LLP and Eva J. Paterson of the Equal Justice Society as co-lead class counsel. *Scholl*, 489 F.Supp.3d 1008, 1047 (N.D. Cal 2020). One of the documents Plaintiff submitted as part of his first level grievance is labeled with the names of the Equal Justice Society and Lieff, Cabraser, Heimann, & Bernstein, LLP. ((ECF No. 56-4 at 8.)

### 3. Analysis

The screening order in this case allowed Plaintiff to proceed on a First Amendment interference with mail claim based on Defendants' refusal to send his outgoing mail. (ECF No. 21 at 6.) Defendants have provided evidence showing that Plaintiff's outgoing mail was rejected as legal mail for failure to address the mail to an attorney, as required by AR 722. The Ninth Circuit has stated that a policy of requiring legal mail to be sent to an attorney presents an

1   "obvious, easy alternative[]" to requiring a page-by-page inspection to determine if the contents

2   actually concern legal matters. *Nordstrom*, 856 F.3d at 1273 (citing *Turner*, 482 U.S. at 90).

3   Therefore, AR 722 does not violate Plaintiff's First Amendment rights to send outgoing legal

4   mail by requiring the mail to be addressed to an attorney. *Id.* Consequently, Plaintiff's First

5   Amendment rights were not violated when his outgoing legal mail was rejected for being

6   addressed to the "Dept. Manager, Identify Theft dept." of the Department of Treasury rather than

7   being addressed to an attorney or other legal representative.

8       Additionally, even if Defendants did violate AR 722 in some way, the failure to follow a

9   prison regulation does not establish a constitutional violation. *Cousins v. Lockyer*, 568 F.3d

10  1063, 1070 (9th Cir. 2009) (*citing Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921, 930 (9th

11  Cir. 2001) (*quoting Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) ("[T]here is no §

12  1983 liability for violating prison policy. [Plaintiff] must prove that [the official] violated his

13  constitutional right . . . .") Further, the Ninth Circuit has held that a prison need not treat all mail

14  sent to government agencies and officials as legal mail. *See O'Keefe v. Van Boening*, 82 F.3d

15  322, 326 (9th Cir. 1996).

16      The burden now shifts to Plaintiff to present evidence that would establish an issue of

17  fact regarding the validity of AR 722 and his First Amendment claim. *Matsushita*, 475 U.S. at

18  586. Plaintiff, however, failed to meet his burden of production. Plaintiff has provided no

19  evidence to rebut the evidence presented by Defendants related to AR 722 and his First

20  Amendment claim or to create an issue of fact for the jury. Plaintiff provides no evidence to

21  dispute that he could send his letter through the regular mail or that the mail was properly labeled

22  under AR 722. Therefore, Plaintiff having failed to meet his burden of production, Defendants

23  are entitled to summary judgment and their motion should be granted. *See Celotex*, 477 U.S. at

323-25 (moving party can prevail on summary judgment by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial).

**B. Incoming Mail**

    **1. Legal Standard**

       "Prisoners have a First Amendment right to receive information while incarcerated." *Jones v. Slade*, 23 F.4th 1124, 1134 (9th Cir. 2022). Prisoners have "a First Amendment right to send and receive mail." *Witherow*, 52 F.3d at 265; *see also Nordstrom*, 856 F.3d at 1271. Prison regulations concerning incoming mail should be analyzed under the *Turner* factors. *See Thornburgh*, 490 U.S. at 411- 13; *Witherow*, 52 F.3d at 265. In determining whether a prison regulation is reasonably related to a legitimate penological interest, the court should consider the following factors: (1) whether there is a valid, rational connection between the regulation and the interest used to justify the regulation; (2) whether prisoners retain alternative means of exercising the right at issue; (3) the impact the requested accommodation will have on inmates, prison staff, and prison resources generally; and (4) whether the prisoner has identified easy alternatives to the regulation which could be implemented at a minimal cost to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see Beard v. Banks*, 548 U.S. 521, 528 (2006); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *Shaw v. Murphy*, 532 U.S. 223, 229-30 (2001); *Tiedemann v. von Blanckensee*, 72 F.4th 1001, 1013 (9th Cir. 2023).

       Prison regulations may be content-based when the regulation is related to legitimate security concerns, but regulations must otherwise be content-neutral. *See Thornburgh*, 490 U.S. at 415-16; *Turner*, 482 U.S. at 90, 93; *Ryan*, 39 F.4th at 1132 (explaining *Turner*'s neutrality requirement). Courts have frequently upheld prison regulations prohibiting inmates from

1  receiving sexually explicit material. *See Thornburgh*, 490 U.S. 401 (upholding the validity of a

2  federal prison regulation restricting sexually explicit material); *Mauro v. Arpaio,* 188 F.3d 1054,

3  1057–63 (9th Cir. 1999) (en banc) (upholding a similar Arizona regulation which prohibited

4  prisoners from possessing "sexually explicit materials," defined as "materials that show frontal

5  nudity," including "personal photographs, drawings, and magazines and pictorials that show

6  frontal nudity"); *Bahrampour v. Lampert,* 356 F.3d 969, 979 (9th Cir. 2004) (finding prison

7  officials may prohibit receipt of sexually explicit materials in light of concerns about preventing

8  the sexual harassment of prison guards and other inmates); *Frost v. Symington,* 197 F.3d 349,

9  357 (9th Cir. 1999) (applying the Supreme Court's *Turner* test to find a regulation prohibiting

10  receipt of sexually explicit images in the prison did not unconstitutionally abridge the inmate's

11  First Amendment rights).

12      **2. Facts**

13      AR 750 governs inmate general correspondence and mail. (ECF No. 69-4 at 3.) AR

14  750.01(1)(O)(2)(h) prohibits receipt of mail that is "sexually explicit, which by its nature poses a

15  threat to the security good order, rehabilitation or discipline of the institution, or facilitates

16  criminal activity. (ECF No. 56-10 at 5; ECF No. 56-11 at 4.) Per 750.03(1), all incoming mail

17  "will be opened for the inspection for contraband, unauthorized items, cash, coin, checks and

18  money orders, and scanned by mailroom staff." (ECF No. 56-10 at 6.)

19      AR 750.06(1) mandates that if any mail addressed to an inmate is rejected for any reason,

20  the inmate shall receive written notice that includes a description of the rejected item, the reason

21  the item was rejected, a notification of his rights to appeal through the grievance process under

22  AR 740, and a notification of his right to appeal by sending an appeal to the Warden. (*Id.* at 11.)

23  Under AR 750.07(1), if an inmate chooses not to grieve the rejection pursuant to AR 740, he

must inform the mailroom officer if he wishes to return the mail to the sender, ship or mail out at the inmate's expense, or have the unauthorized mail be disposed of according to NDOC procedures. (*Id.*) If an unauthorized mail notification is appealed, the appeal is reviewed by the PRC. (ECF No. 69-4 at 4.) The PRC includes at least one Associate Warden to allow an independent review of the determination made by the mail room staff. (*Id.*)

On March 11, 2022, Amanda Allred issued a notice to Plaintiff that his mail was unauthorized because it contained "bondage and violence." (ECF No. 56-7 at 8; ECF No. 69-5 at 3.) Allred is not, and was never, named as a defendant in this case. (ECF No. 69-5 at 3; *see* ECF Nos. 10, 15, 19.) Allred declares that she personally reviewed the piece of mail in question, and it contained depictions of bondage and violence. (ECF No. 69-5.) Allred also declares that based on her experience working at ESP, the mail in question would have caused a disruption to the safety and security of the institution if it was allowed to circulate within Plaintiff's unit. (*Id.*)

The unauthorized mail notice provided Plaintiff with three options for what to do with the incoming mail: (1) ship or mail out at the inmate's expense; (2) have the unauthorized mail be disposed of according to NDOC procedures; or (3) appeal the decision through the inmate grievance process. (ECF No. 56-7 at 8.) Plaintiff chose to ship the mail out at his own expense. (*Id*; ECF No. 69-5 at 3.) In response to Defendants' interrogatories, Plaintiff states he chose to ship the mail out because he believed the grievance process would have been futile. (ECF No. 69-2 at 12.)

On March 23, 2022, Plaintiff filed informal grievance 2006-31-36017, claiming his incoming LGBTQ mail was denied without legitimate penological justification because mail room staff falsely claimed it contained "BDSM or bondage." (ECF No. 56-7; ECF No. 56-11 at 4.) The informal grievance was denied for lack of standing to challenge the decision because he

1  chose to ship out the mail instead of seeking further review by the Publication Review

2  Committee (PRC). (ECF No. 56-7 at 2, 9.)

3      Plaintiff subsequently filed a first level grievance, arguing that Roman and Allred failed

4  to provide proof the publications were violations and arguing the PRC would take Roman and

5  Allred's side and rule against him. (*Id.* at 11.) Plaintiff also argued that LGBTQ discrimination

6  was "pervasive" and "obvious" based on the denial of his mail. (*Id.*) The first level grievance

7  was denied for the same grounds as the informal grievance: Plaintiff did not have the ability to

8  appeal the decision because he chose to ship his mail out. (*Id.*)

9      On September 16, 2022, Plaintiff filed a second level grievance. (*Id.* at 13-14.) Plaintiff

10  claimed that Roman and Mauro told him that no explicit material was allowed to be delivered,

11  despite other inmates receiving "bust it open," which includes sexually explicit material. (*Id.*) On

12  October 13, 2022, the second level grievance was rejected for the same reason as the informal

13  and first level grievances. (*Id.* at 15.)

14      **3. Analysis**

15      This claim was allowed to proceed based on Plaintiff's allegations that his mail was

16  rejected for no valid reason, in violation of his First Amendment rights. (ECF No. 21 at 6.)

17  Defendants provide evidence to establish that Plaintiff's mail was rejected for containing

18  sexually explicit material which is prohibited under NDOC's regulations. Plaintiff was then

19  notified of the rejection, given his options for proceeding with an appeal or otherwise disposing

20  of the mail, and chose to have the mail shipped out at his expense. Courts have regularly upheld

21  regulations restricting receipt of sexually explicit materials in prisons as not unconstitutionally

22  abridging inmates' First Amendment rights. *See Thornburgh*, 490 U.S. 401; *Mauro,* 188 F.3d at

23

1057–63; *Bahrampour,* 356 F.3d at 979; *Frost,* 197 F.3d at 357. Defendants, therefore, have shown that Plaintiff's mail was denied for a valid reason: containing sexually explicit content. Thus, Defendants have met their burden on summary judgment and the burden shifts to Plaintiff to establish a genuine dispute exists. *See Celotex*, 477 U.S. at 323-25; *Matsushita*, 475 U.S. at 587.

Aside from conclusory statements that NDOC officials falsely labeled the material as sexually explicit, Plaintiff does not provide any evidence to dispute the nature of the incoming mail. *See Matsushita*, 475 U.S. at 587 (nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data). While allegations that LGBTQ material is being discriminated against are concerning, there is no evidence in the record showing the incoming mail was denied based on the LGBTQ nature of the material. Rather, the evidence shows the mail was rejected because it contained depictions of bondage and violence, which is permissible under the First Amendment. *See Thornburgh*, 490 U.S. 401; *Mauro,* 188 F.3d at 1057–63; *Bahrampour,* 356 F.3d at 979; *Frost,* 197 F.3d at 357.

Turning to Plaintiff's claims that any appeal of the rejection would be futile, Plaintiff cannot rely on such conclusory allegations to avoid summary judgment. *Matsushita*, 475 U.S. at 587. An avenue to appeal the rejection was available to Plaintiff, however, he voluntarily declined to pursue an appeal by having his mail sent out of the facility. Consequently, Plaintiff has failed to meet his burden of showing a genuine dispute of material fact exists as to whether Defendants violated his First Amendment rights in rejecting incoming mail containing sexually

1 | explicit material. *Id.* Therefore, Defendants are entitled to summary judgment as to Plaintiff's

2 | incoming mail claim.[3]

### IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (ECF No. 69) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: February 12, 2025

_____
Craig S. Denney
United States Magistrate Judge

---

[3] The evidence in the record shows that the person responsible for rejecting Plaintiff's mail was not named in this suit, which presents significant personal participation issues. However, as Plaintiff's claims are resolved on the merits by finding no constitutional violation occurred, the court will not address Defendants' personal participation arguments. The court will not address Defendants' qualified immunity arguments for the same reason.